# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

CHARLES KEITH SINGLETARY,

                Petitioner,

-vs-                                          Case No. 2:07-cv-546-FtM-33SPC

UNITED STATES OF AMERICA,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on the Petitioner Charles Keith Singletary's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct the Petitioner's Sentence by a Person in Federal Custody (Doc. #1) and the Petitioner's Memorandum in Support of Motion 28 U.S.C. § 2255 (Doc. #2) filed on August 31, 2007. The Respondent United States filed its Answer in Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 (Doc. #6) on November 21, 2008. The Petitioner filed the Petitioner's Reply To the United States' Response to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. #7) on November 30, 2008. On April 14, 2009, the Honorable Virginia M. Hernandez-Covington entered an Order (Doc. #14) referring this matter to the undersigned United States Magistrate Judge for a report and recommendation. A hearing was set before the undersigned on June 16, 2009.

At the hearing on June 16, 2009, the Petitioner was present and represented by Attorney Charles A. Murray. The Petitioner testified on his own behalf, and called three additional witnesses: Marlene Santonastaso, Catherine Singletary, and Audie Singletary. Additionally, the Petitioner introduced an Affidavit from Nevin McLeran. (Doc. #25). The Government was represented by Assistant United States Attorney James C. Preston, Jr. and called one witness, Wilbur Smith, III, Esq.

## EVIDENCE AND TESTIMONY

### Charles Keith Singletary (Petitioner) (Tr. 4-14)

Petitioner is currently incarcerated in Butner, North Carolina. (Tr. 4:20-21). Petitioner testified he worked for BRB in 1998 and stopped working for them at the end of 1998. (Tr. 5:10-11). Petitioner worked for Darrell Taylor while employed at BRB. (Tr. 5:15-16). He testified Darrell Taylor is a co-conspirator in the conspiracy he was charged with. (Tr. 5:16-18). Petitioner testified he left the employment as a result of "some disagreements". (Tr. 5:19-20). He states he quit before being fired at the end of 1998, but it could have been at the beginning of 1999. (Tr. 5:22-25, 6:1-2). Petitioner testified that he plead guilty based upon the advice of his attorney, Wilbur Smith (Atty. Smith). (Tr. 6:7-8). He was not offered other options other than pleading guilty. (Tr. 6:11-12). He was unaware of whether or not Atty. Smith interviewed other witnesses. (Tr. 6:14-15). Atty. Smith did not discuss the concept of statute of limitations with Petitioner. (Tr. 6:16-18). It wasn't until he was reading law while incarcerated that he saw the statute of limitations and thought it would have helped him. (Tr. 6:21-23). Petitioner testified that Atty. Smith advised him that he would get ten years. (Tr. 6:24-25, 7:1). Petitioner received a sentence of seventeen and a half (17 ½) years. (Tr. 7:5) Petitioner pled guilty to five kilos or more of cocaine but the pre-sentence investigation report

(PSI) stated 150 kilos. (Tr. 7:8-9 ). Petitioner states this was not explained to him by Atty. Smith at the time and Atty. Smith did not object to the errors in the PSI. (Tr. 7:10-11, 8:2-4). Petitioner testified the DEA told him he would get five years during an interview. (Tr. 8:8-11). Petitioner eventually turned himself in to the U.S. Marshals. (Tr. 8:6). Prior to being indicted, Petitioner had a number of interviews with law enforcement. (Tr. 9:3-6). During those meetings, details of Petitioner's involvement in the drug importation conspiracy were discussed. (Tr. 9:7-10). Petitioner stated law enforcement knew more about the conspiracy than he did. (Tr. 9:13). During the interviews, Petitioner provided some information to law enforcement about things he did to assist in the importation of cocaine into the Middle District of Florida. (Tr. 9:19-23). Petitioner testified law enforcement told him about things that he did not do but he agreed with them. (Tr. 9:24-25). He states they advised him the more he told them, the less time he would get and to just go along with what they said and he would get five years. (Tr. 10:2-5). Petitioner was unhappy with the sentence he received and that was why he filed the 2255. (Tr. 10:10-13). Petitioner stated in his affidavit he only participated in one event regarding the conspiracy. (Tr. 10:20-23). Law enforcement agents told him it was three times and Petitioner agreed with them. (Tr. 11:1-4). During the plea, Petitioner told the Court it was three times. (Tr. 11:5-8). Petitioner did not recall outlining specific things he did on those three occasions as an offloader and look out. (Tr. 11:9-12). Petitioner indicated during his plea hearing under oath that he was an active co-conspirator on three occasions, but in the affidavit, he states under oath it was only one time as both a look out and offloader. (Tr. 11:16-23). The boat went out, unloaded, they came in, he went and looked out, they unloaded the boat some, and he came back and unloaded the boat. (Tr. 12:9-11). The offload occurred right off Marco Island. (Tr. 12:14-15).

**Marlene Marie Santonastaso** (Tr. 15- 20).

Santonastaso is currently employed as a waitress at the Saw Grass Grill. (Tr. 15:15-18 ). She was previously employed at BRB Site Development in 1999, as an independent contractor and was subsequently placed on the payroll. (Tr. 15:19-25, 16:1). Santonastaso worked as a secretary doing accounts receivable, accounts payable, and payroll. (Tr. 16: 23-24). The payroll was prepared weekly. (Tr. 17:10-12). Santonastaso did not prepare a check for the Petitioner and his brother because they were no longer employed with the company. (Tr. 17:13-18). Records indicated they were fired in the beginning of 1999. (Tr. 17:19-23). Santonastaso could not remember the exact date when their employment was terminated. (Tr. 18: 7-8). She did not know anything about participation in a conspiracy or activities relating to drugs, specifically cocaine. (Tr. 18:9-11). Santonastaso knew the Petitioner and his brother were related by marriage to Darrell Taylor. (Tr. 18:12-19). She did not know about their relationship as it related to the importation of cocaine. (Tr. 26:23-25, 27:1-5). Santonastaso knew the Petitioner and his brother since she was a teenager. (Tr. 19:10-12). She stated she only knew about the site development work, which involved a partnership. (Tr. 19: 20-21). The Petitioner and his brother were promised a larger percentage than they were receiving which caused the falling out and eventual split. (Tr. 19:25, 20:1-3)

**Catherine Singletary** (Tr. 20-27)

Catherine Singletary testified that Atty. Smith represented to the Petitioner, her husband, about only serving ten (10) years when they met with him at his office. (Tr. 21: 5-11). Atty. Smith told them he [the Petitioner] needed to plead guilty or he would get life and if he went with the program, he would only get ten years. (Tr. 21:12-15). She could not remember if he told them that the Judge had the final say. (Tr. 21:16-18). It was her understanding when they came into court he

wasn't going to get more than ten years.  (Tr. 22:2-3).  Catherine Singletary was in Court with her husband when he pled and witnessed the Petitioner tell the Court under oath that there were no promises or assurances of a sentence.  (Tr. 22:9-25).  She stated they were told if he pled guilty he would only get ten years. (Tr. 22:15).  She did not remember the Defendant telling the Court that he understood the penalties in this case.  (Tr. 22:24-25, 23:1-2).  She vaguely remembers the plea agreement, she just thought he was going to get ten years. (Tr. 23:3-5).  Catherine Singletary was there when Counsel discussed the plea agreement.  (Tr. 23:6-11). She remembers if he pled guilty, he would not get life.  She didn't know anything about a mandatory life sentence.  (Tr. 23:14-24). It was her impression when she left the discussion, he would not get more than ten years. (Tr. 23:25, 24:1).

## Audie Craig Singletary (Tr. 31-39)

Audie Singletary is incarcerated in Coleman, Florida.  (Tr. 32:12-13).  Audie Singletary worked at BRB for Darrell Taylor.  (Tr. 32:14-15).  Audie Singletary testified Darrell Taylor was involved in the conspiracy to import cocaine.  (Tr. 32:18-22).  Audie Singletary further testified he worked for Darrell Taylor and participated in three importations. (Tr. 32:24-25, 33:1)  The last importation was in 1998.  (Tr. 33:2-3).  Audie Singletary testified that to his knowledge, the Petitioner participated in the 1998 importation.  (Tr. 34:19-25).  Audie Singletary stated he had a falling out with Taylor because he was going into business with his brother, the Petitioner. (Tr. 33:4-9).  The Singletarys were going to do the same excavating work as BRB.  (Tr. 33:10-13). The relationship with Taylor ended during the last part of 1998 or first part of 1999.  (Tr. 33:14-16). Audie Singletary testified that  he went to give Taylor his two weeks notice and Taylor stated that if he was working with his brother, he was fired.  (Tr. 34:20-23).  Taylor was angry.  (Tr. 34:24-25).

Audie Singletary testified that the Petitioner was fired probably a month prior to him and after they were fired, the brothers did not participate in any importations . (Tr. 34:1-6).   Audie Singletary states there were hard feelings between himself and Taylor. (Tr. 34:10-12).  Audie Singletary states he wasn't sure of the dates but during his plea, he guessed the first time was between 1999 and 2000. (Tr. 35:1-3).  Audie Singletary testified the first activity in the conspiracy was while serving as a crew member on a boat.  (Tr. 35:19-25).  He went on a boat about one hundred miles offshore, off Pine Island. (Tr. 36:1-7).  Audie Singletary stated that this was the first time.  (Tr. 36:8-9).  Subsequently, Audie Singletary participated on two other occasions.  (Tr. 36:20-22). He was not sure how far apart the loads of cocaine were.  (Tr. 36:23-25).  Audie Singletary testified the DEA pretty much told him what to say and promised him five years. (Tr. 37:9-10).  He states they told him that based upon his past, he would get no more than five years and it was the best they could do for him.  (Tr. 37:13-15). Audie Singletary testified that the last offloading was in 1998 and when last in Court, he told them the dates were wrong but they didn't care and he did not participate after that.  (Tr. 37:19-25, 38:1) .  He was unsure of the dates and but said that it could have been in the beginning of 1999.  (Tr. 37:12-18).

**Wilbur Charles Smith III (Tr.  39-60)**

_____Atty. Smith testified as to his representation and involvement with the Petitioner's case**.**  Atty. Smith represented the Petitioner in criminal case 2:05-cr-21, involving the importation of or conspiracy to import cocaine into the Middle District of Florida. (Tr. 40:7-10). Atty. Smith reviewed the Petitioner claims of ineffective assistance of Counsel, specifically the Petitioner's claim that he was advised to lie to the Court about certain things.  (Tr. 40:19-25, 41:1-3).

Atty. Smith met in the conference room at his office with the Petitioner after having received the plea agreement from the Government. (Tr. 41:14-25). The two went through the agreement page by page and Atty. Smith explained what it meant and how it affected the Petitioner's plea. (Tr. 41:22-25, 42:1-5). The plea agreement contained the standard provision called the "waiver of appeal provision" which was explained to the Petitioner. (Tr. 42:5-9). Atty. Smith did not advise the Petitioner that he would be guaranteed a ten year sentence, but advised the penalties were a mandatory minimum of ten years up to a maximum of life in prison. (Tr. 42:13-17).

Atty. Smith testified that based upon the Petitioner's prior convictions, he faced a mandatory life sentence if the Government filed a motion to enhance the sentence to life imprisonment. (Tr. 27:18-22, 4: 4-6). However, he explained that in the plea agreement the Government agreed not to file an enhancement based on the Petitioner's cooperation. (Tr. 42:23-25, 44:1-6).

During the initial meeting between Atty. Smith and the Petitioner, Atty. Smith states the Petitioner appeared to be very personable and forthright, explaining the circumstances that lead to his indictment. (Tr. 43:14-19). The Petitioner told Atty. Smith that someone involved in the conspiracy told him that it would be in his best interest to go to law enforcement and give them a statement. (Tr.43:19-25). Atty. Smith explained the minimum mandatory and how the Government could file a motion indicating the Petitioner's substantial assistance and those types of sentencing considerations. (Tr. 45:1-6).

Further, Atty. Smith stated he wanted to be certain that statements made to law enforcement were not coerced by someone acting on behalf of the Government. (Tr. 45:7-10). The statements were later reviewed by Atty. Smith and although the Government made "very brief notations" they appeared to substantiate what the Petitioner said was his role in the conspiracy. (Tr. 45:13-25). The

statements indicated the Petitioner was involved in importations on at least three occasions, which was substantiated by the Petitioner. (Tr. 45:2-5). He did not tell Atty. Smith that he was only involved on one occasion. (Tr. 46:13-15).

During the plea hearing, as was Atty. Smith's understanding, the Petitioner, while under oath, advised that there were no other promises other than what was stated in the plea agreement. (Tr. 44:18-21). There was some question as to the previous discussions between law enforcement, but the Court explained that any impressions received as a result of conversations with law enforcement were not binding on the Court, nor a part of the plea. (Tr. 45:24-25, 46:1-9). The Petitioner advised the Court that he fully understood and Atty. Smith was certain he did. (Tr. 46:18-21). Atty. Smith further testified that there were no side deals or promises. (Tr. 46:22-24).

Atty. Smith's impression is that the Petitioner believed he would be treated more favorably if he cooperated with the Government, however, he was advised that they would try to secure the best plea conditions possible but no deal could have been made with the agents or Government. (Tr.47:1-18). At the time of the plea, Atty. Smith believed he received the best plea agreement he was going to get. (Tr. 47:19-23). Atty. Smith believed the Petitioner was fully aware that other plea factors were in the discretion of the Court and those factors were argued to the Court on his behalf. (Tr. 48: 1-5).

The Petitioner had two plea hearings as a result of an issue arising from the first plea hearing. (Tr. 48:10-21). The Petitioner's plea was accepted after the second hearing. Atty. Smith testified that he was aware of the Petitioner's "health issues", which may have been a factor in the Petitioner's mind, but was not a factor in the advice he gave the Petitioner. (Tr. 50:3-18).

At the initial meeting, Atty. Smith testified that the issue of statute of limitations was discussed early on, but discounted because the case involved a conspiracy charge and with no apparent act to withdraw from the conspiracy, the statute of limitations did not apply. (Tr. 50:19-25, 51:1-6). Atty. Smith further testified on cross examination that he understood the statute of limitations was five years. (Tr. 52: 3-5). He did not speak to employees of BRB. (Tr. 52: 20-21). He could not recall the name of the individual in charge of the conspiracy except that it was known to him as the "Weeks Organization". (Tr. 53:4-6). Atty. Smith stated it appeared the last participation was more than five years ago but did not attempt to talk to any co-conspirators to find that out because there was no evidence of his [the Petitioner's] withdrawal from the conspiracy and the conspiracy continued on. (Tr. 52:10-15). Atty. Smith moved the case forward in plea mode and believed a motion to dismiss on statute of limitations grounds would have been fruitless. (Tr. 52:23-25, 53:1-5). He does not remember the mention of the DEA's promise of five years. (Tr. 54:17-20).

Atty. Smith stated that he relied on the statements of his client and did not perform an independent investigation as to the existence of his withdrawal. (Tr. 54:21-25, 55:1-2) . Some affirmative act, such as moving, or telling the individuals he will no longer help, or reporting it to law enforcement, was necessary to prove he was no longer involved in the conspiracy. (Tr. 56:24-25, 57:1-5). He did not recall the Petitioner telling him that he was fired because of a falling out with Darrell Taylor and that he didn't participate anymore in the conspiracy. (Tr. 57:6-9).

Atty. Smith testified he discussed the difference about knowing he was unloading cocaine as opposed to marijuana based on actually seeing the inside of the package or based on weight and other circumstances, but never instructed the Petitioner on how to answer in order to proceed with the plea.

(Tr. 57:25, 58:1-7). He stated the Petitioner told him that he thought he was unloading marijuana but when he started he knew it was cocaine. (Tr. 58:12-15).

Atty. Smith did not conduct an independent investigation, and based upon the discussions he had with the Petitioner and the Government, it was determined that they would not prevail on a statute of limitations argument. (Tr. 59:5-9). He does not remember any names the Petitioner mentioned and he did not specifically ask if he told Darrell Taylor that he wasn't going to participate anymore. (Tr.59:5-17)). Rather, Atty. Smith indicates he asked questions to determine if he had done so. (Tr. 59:18-23).

### DISCUSSION

There are four grounds for attacking a sentence pursuant to 28 U.S.C. § 2255: first, if it was imposed in violation of the Constitution or laws of the United States; second, if it was imposed without jurisdiction; third, if it was imposed in excess of the maximum authorized by law; and finally, if it is otherwise subject to collateral attack. U.S. v. Walker, 198 F.3d 811, 813 n. 5 (11th Cir. 1999).

The Plaintiff alleges ineffective assistance of counsel. Ineffective assistance of counsel is a cognizable claim under the terms of the statute. The Sixth Amendment of the Constitution guarantees criminal defendants the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). A convicted Defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgement. Chateloin v. Singletary, 89 F.3d 749, 752 (11th Cir. 1996).

It is well settled that Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), is the controlling legal standard for determining ineffective assistance of counsel claims. Haliburton, 342 F.3d at 1243. Strickland established a two pronged standard to determine whether

or not counsel's assistance was ineffective. 466 U.S. at 687. First, the defendant must show that counsel's performance was so deficient that he was not performing as the "counsel" guaranteed by the Sixth Amendment. Id. Second, the defendant must show that counsels ineffective assistance prejudiced the defense to such a degree that the defendant was deprived of the right to a fair trial. Id. The defendant must satisfy both prongs to prove ineffective assistance of counsel. Id. Moreover, counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, and need only provide the client with an understanding of the law in relation to the facts in order that the client may make an informed and conscious choice between entering a guilty plea and going to trial. Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984).

Because the Court is reviewing the counsel's performance from hindsight, the Court must indulge a strong presumption that the counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 689. The Petitioner bears the burden of overcoming the presumption that, his attorney provided competent and effective assistance of counsel in his defense. U.S. v. Cronic, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).

The Petitioner alleges five (5) grounds in his Motion: (1) Ineffective assistance of counsel to advise him during the plea negotiations, thus, making his plea not entered into voluntarily and knowingly; (2) Ineffective assistance of counsel because his counsel failed to investigate the statute of limitations; (3) Ineffective assistance of counsel for failing to argue sentence disparity (4) Ineffective assistance of counsel for failure to challenge the drug quantity determinations in the pre-sentencing report (PSR); and (5) Ineffective assistance of counsel as to the probation officer 's misuse of prior convictions adding extended jail time, no objections. At the time of the hearing, Atty. Murray

appeared to raise yet another ground - Ineffective assistance of counsel on the part of Atty. Murray to find co-defendant Darrell Taylor in time to testify at the § 2255 hearing .

### (1) Whether Singletary's Plea was Entered Voluntarily and Knowingly Made

The Petitioner states that his plea was involuntary and unknowingly entered into because his counsel assured him that he would receive no more than ten (10) years incarceration if he would plead guilty. Therefore, he received ineffective assistance of counsel. The Government responds that any claim the Petitioner made about his counsel's advice regarding the length of his sentence was negated by the Court's direction that he faced up to life in prison for his offense, and further that he waived any attacks on his sentencing when he plead guilty.

"It is well settled that sentence-appeal waivers are valid if made knowingly and voluntarily." Furlow v. U.S., 2006 WL 1766520 * 2 (M.D. Fla. June 26, 2006) (citing Williams v. U.S., 396 F.3d 1340, 1341 (11th Cir.), *cert. denied,* 126 S. Ct. 746 (2005)). With regard to whether a sentence-appeal waiver included the waiver of the right to challenge the sentence collaterally in the context of a section 2255 motion, the Eleventh Circuit Court of Appeals in Williams held as follows: [E]very Circuit to have addressed the issue has held that a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing. Furlow, 2006 WL 1766520 at * 2 (citing United States v. White, 307 F.3d 336, 341-44 (5th Cir. 2002); Garcia-Santos v. U.S., 273 F.3d 506, 508-09 (2nd Cir.2001); Davila v. U.S., 258 F.3d 448, 451-52 (6th Cir.2001); U.S. v. Cockerham, 237 F.3d 1179, 1183-87 (10th Cir.2001), *cert. denied,* 534 U.S. 1085, 122 S.Ct. 821, 151 L.Ed.2d 703 (2002); Mason v. U.S., 211 F.3d 1065, 1069-70 (7th Cir.2000), *cert. denied,* 531 U.S. 1175, 121 S. Ct. 1148, 148 L. Ed.2d 1010 (2001).

The Eleventh Circuit stated that the foregoing consistent line of case law from its sister Circuits on this issue was persuasive, particularly since a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless. Furlow, 2006 WL 1766520 at * 2.

To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; (3) the defendant must know and understand the consequences of his guilty plea. U.S. v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999). At his guilty plea the undersigned informed the Petitioner that he would be asked a number of questions to ensure that he was voluntarily entering into the guilty plea. (Criminal, Doc. # 155, p.2:11-17). The petitioner was further informed that if he did not understand something he should let the Court know. (Criminal, Doc. # 155, p. 2:11-17). The Petitioner was further informed that if at any time during the colloquy he needed to speak with his attorney, he could stop the proceedings and would be given the opportunity. (Criminal, Doc. # 155, p.2:18-21).

While the Petitioner argues he had ineffective assistance of counsel because his counsel told him he would get only ten (10) years, the Court specifically asked the Petitioner if he understood that his attorney could not be specific as the guideline range in his case. (Criminal, Doc. # 155, p.9:23-25; p. 10:1). The Petitioner replied yes. (Criminal, Doc. # 155, p.10:1). The Court further informed the Petitioner that he could not withdraw his plea if his counsel's predictions about his sentence were inaccurate and that the Court would use the guidelines and could impose a sentence harsher than the guidelines recommended if necessary. (Criminal, Doc. # 155, 10:4-20). Again the Petitioner replied yes. (Criminal, Doc. # 155, 10:20). The Petitioner was informed that the terms of the agreement and no other promises or statements by any agents would effect the sentence he might receive. (Criminal,

Doc. # 155, 14:2-17). The Court continued that the count against the Petitioner carried a mandatory minimum of ten (10) years up to life in prison. (Criminal, Doc. # 155, 15:21-23). The Petitioner stated that he understood the consequences of his plea. (Criminal, Doc. # 155, 16:1-5). Further, the Petitioner when asked whether anyone had threatened him or promised him anything in order to get him to enter his plea, responded, "No." (Criminal, Doc. #155, 5:24-25, 6:1).

The Petitioner was well informed that any promises made regarding the length of his potential sentence were not valid and that the sentencing court would make that determination and could use the guidelines to impose a harsher sentence. The Petitioner stated that he clearly understood that his sentence would be imposed by the court irregardless of his counsel's estimates including up to life in prison, and yet he agreed to continue and enter a guilty plea. The Petitioner had a clear and thorough understanding that his sentence could exceed the ten (10) years even up to life in prison.

The Petitioner was also informed that upon entering his plea that he was waving his right to appeal his sentence. (Criminal, Doc. # 155, 11:1-16). The Defendant stated that he understood that he was losing his right to appeal. (Criminal, Doc. # 155, 11:16). The Court notes that "there is a strong presumption of truth to statements made by [a] defendant during plea colloquy." U.S. v. Rubioo-Ledezma, 2006 WL 551317 * 2 (11th Cir. March 8, 2006) (citing U.S. v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994). The Petitioner stated that he understood the plea agreement and its terms that statements by his attorney or government agents could bind the Court in regards to the length of his sentence. Thus, the Petitioner knowingly and voluntarily entered into his plea.

A review of the record reveals that Petitioner voluntarily and knowingly entered into his guilty plea and that he understood the full significance of his waiver of collateral relief. *See* Giuliano v. U.S.,

2008 WL 786813 * 3 (M.D. Fla. March 20,2008) (citing <u>U.S. v. Weaver</u>, 275 F.3d 1320, 1333 (11th Cir.2001) ("To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver."); <u>U.S. v. Bushert</u>, 997 F.2d 1343, 1352 (11th Cir.1993) ("[F]or a sentence appeal waiver to be knowing and voluntary, the district court must have engaged the defendant about the sentence appeal waiver during the Rule 11 hearing."). Therefore, with regard to the Petitioners sentence he effectively waived any appeal or challenge of the length of his sentence collaterally in the context of a section 2255 motion. <u>Furlow</u>, 2006 WL 1766520 at * 2 (citing <u>White</u>, 307 F.3d at 341-344).

### (*2) Whether Counsel's Assistance was Ineffective for Failure to Investigate the Statute of Limitations*

No absolute duty exists to investigate a particular line of defense. Counsel's decision not to conduct an investigation need only be reasonable. <u>Williamson v. Moore</u>, 221 F.3d 1177, 1180 (11th Cir. 2000) (citing <u>Strickland</u>, 104 S.Ct. at 2066 ("[C]ounsel has a duty ... to make a reasonable decision that makes particular investigations unnecessary."). This Circuit has refused to conclude that tactics "can be considered reasonable only if they are preceded by a 'thorough investigation." <u>Williamson</u>, 221 F.3d at 1180 (citing <u>Williams v Head</u>, 185 F.3d 1223, 1236-1237 (11th Cir. 1999)).

"The reasonableness of a counsel's performance is an objective inquiry." <u>Chandler v. U.S.</u>, 218 F.3d 1305 (11th Cir.2000)(en banc); *see also* <u>Darden v. Wainwright</u>, 477 U.S. 168, 106 S. Ct. 2464, 2474, 91 L. Ed.2d 144 (1986) (noting that counsel's performance did not fall below "an objective standard of reasonableness"). The inquiry focuses on whether a reasonable attorney could have acted in the same manner as trial counsel did act at the trial. <u>Chandler</u>, 218 F.3d at 1315; *see also* <u>Waters v.</u>

Thomas, 46 F.3d 1506, 1512 (11th Cir.1995) (*en banc*)("The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial ...").

The Petitioner argues that he received ineffective assistance of counsel because Atty. Smith failed to investigate whether or not the statute of limitations had run on the charges against him. The Government argues that the Petitioner waived the right to appeal on those grounds under § 2255.

The Petitioner argues that it had been over five (5) years since his last participation in the drug business, and therefore, the statute of limitations had run on the charges. "A conspiracy is deemed to have continued as long as the purposes of the conspiracy have neither been abandoned nor accomplished and the defendant has not made an affirmative showing that the conspiracy has terminated. A defendant can overcome this presumption of continued participation only [by] showing that he affirmatively withdrew from the conspiracy or the final act in the furtherance of the conspiracy has occurred." U.S. v. Rodriquez, 2007 WL 3333483 * 2 (M.D. Fla. November 8, 2007) (citing U.S. v. Harriston, 329 F. 3d 779. 783 (11th Cir. 2003)).

Atty. Smith stated that he considered the statue of limitations defense but there was no affirmative act by the Petitioner to terminate his involvement in the conspiracy. In order to withdraw, the conspirator must show affirmative acts to defeat or disavow the purpose of the conspiracy. Rodriquez, 2007 WL 3333483 at * 2.

The testimony from the hearing shows that Atty. Smith did look into the statute of limitations defense. At his initial meeting with the Petitioner, Atty. Smith testified that the issue of statute of limitations was discussed early on, but was discounted because the case involved a conspiracy charge

and with no apparent act to withdraw from the conspiracy, therefore he believed the statute of limitations did not apply. (Tr. 50:19-25, 51:1-6). Atty. Smith further testified on cross examination that he understood the statute of limitations was five (5) years. (Tr. 52: 3-5). Atty. Smith stated it appeared the Defendant's last participation was more than five (5) years ago however, he did not attempt to talk to any co-conspirators to find that out because there was no evidence of his withdrawal from the conspiracy and the conspiracy continued on. (Tr. 52:10-15). Although the Petitioner argues that the Petitioner's firing from BRB in early 1999 proved he had exited the conspiracy, his argument lacks merit. The Petitioner presented witness Marlene Santonastaso to support his claims that he was terminated from BRB in early 1999, and therefore, he was no longer in the conspiracy after that date. However, contrary to the Petitioner's claims, Santonastaso testified that she did not know the exact date the Singletary's were terminated, and had no knowledge of the cocaine conspiracy or of the Petitioners involvement in the conspiracy. (Tr. 18:7-11). Thus, Santonataso's testimony did not present any evidence that the Petitioner was or was not involved in the conspiracy after early January of 1999.

As a result, there was no failure on the part of Atty. Smith to investigate Santonataso because she had no relevant information relating to the actual conspiracy. Instead, Atty. Smith made a strategic decision, based upon his experience and the law at the time, that the statute of limitations argument did not apply. The Court takes note that Atty. Smith is a well-known and seasoned criminal defense lawyer with over 25 years of experience in practicing criminal law. Since the Court is reviewing Atty. Smith's performance from hindsight, the Court must indulge the strong presumption that Atty. Smith's consideration of the statute of limitations defense was well within the wide range of reasonable professional assistance required by the Sixth Amendment. Haliburton, 342 F.3d at 1242.

Based upon the testimony and evidence presented at the hearing, Atty. Smith's decision regarding

the statute of limitations was reasonable and in agreement with the actions a reasonable attorney

would have taken when faced with the same set of facts and circumstance. [1]

### (3) Whether Defense Counsel was Ineffective for Failing to Argue Sentence Disparity

The Petitioner argues that his sentence of 210 months was excessive when other members of

the conspiracy received sentences of only forty-six (46) months and thus, violated 18 U.S.C. §

3553(a).  Among the factors a district court must consider in imposing a sentence is "the need to

avoid unwarranted sentence disparities among defendants with similar records who have been found

guilty of similar conduct." 18 U.S.C. § 3553(a)(6). U.S. v. Arevalo-Juarez, 464 F.3d 1246, 1250

(11th Cir. 2006). However, the Court is not required to consider the disparity of sentences among

co-defendants even though it may do so. U.S. v. Lamonde, 2008 U.S. Dist. LEXIS 178 (M.D. Fla.

2008).

At the Petitioner's sentencing, Atty. Smith argued that the Petitioner's sentence should be 120

months which is the low end of the sentencing guidelines. (Criminal, Doc. # 226, p. 17:4-10).  As

grounds for the low end sentence, Atty. Smith noted the Petitioner's cooperation and honesty

working with the Government. (Criminal, Doc. # 226, p. 17:4-10).  Thus, Atty. Smith argued that

---

[1]When the same issue was raised in Audie Craig Singletary vs.
USA, 2:07-cv-611-FtM-33SPC regarding the underlying offense in USA
vs. Audie Craig Singletary 2:05-cr-21-FtM-33SPC, Defense Attorney
Thomas H. Ostrander also faced a Statute of Limitations argument.
Based upon his over 25 years as a criminal defense attorney,
Ostrander came to the same conclusion as Atty. Smith - that the
Statute of Limitations argument did not apply under the facts and
circumstances of this case because there was no affirmative act to
withdraw from the conspiracy.

under Booker, the Court should use its discretionary authority and sentence the Petitioner to 120 months.

What is more, Atty. Smith did argue that others in the conspiracy, specifically Darrell Taylor, who was more culpable than the Petitioner, received only 135 months. (Criminal, Doc. # 155, 15:21-25; 16:1-3). Atty. Smith also argued for a shorter sentence based upon the Petitioner's poor health, noting that a sentence longer than ten (10) years could be, in essence, a life sentence. (Criminal, Doc. # 155, 15:9-19). Atty. Smith continued that the Petitioner went in and voluntarily confessed and immediately began to cooperate with the Government's investigation. Thus, Atty. Smith provided the Court with a strong argument of mitigating circumstances to consider when sentencing the Petitioner. Thus, it is respectfully recommended the Petitioner's objection based upon the PSR should be denied as waived and further because it lacks merit due to Atty. Smith's objections and arguments in favor of a shorter sentence at the sentencing hearing.

In the end the Court sentenced the Petitioner to 210 months stating as follows:

> [w]hile your lawyer asked me to sentence you to 120 months, I can't do that. This is– not because I don't have the option. I do have the option if I so choose. It's because of the severity of the crime. I went through it at the last sentencing of your co-defendant, Mr. Daniels, but the amount of drugs involved here is just hard to even fathom . . . .

(Criminal, Doc. # 226, p. 17:4-10). Thus, the Petitioner's counsel was not ineffective in arguing a sentence reduction but performed as a reasonable attorney under similar circumstances would have performed. The Court analyzed the evidence in the case, and sentenced the Defendant accordingly.

### (4) Whether Defense Counsel was Ineffective for Failing to Challenge the Quantity Amounts in the PSR

The Petitioner states his counsel proved ineffective for failing to object to the quantity of drugs attributed to him at sentencing contrary to Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L. Ed. 2d 435 (2000). ; Blakely v Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); and U.S. v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Apprendi states that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 488.

The Petitioner argues that he should have been sentenced based only upon the five (5) kilograms of cocaine he was involved with rather than the 150 kilograms attributed to the entire conspiracy. As a result, the Petitioner argues that he was sentenced using facts, the amount of cocaine, that were not presented to a jury. The Government responds that the Petitioner's Counsel did bring up Aprendi at his sentencing and also addressed Booker. However, the Petitioner's Apprendi and Booker claims fail because the Eleventh Circuit has determined that the appeal waiver includes claims based upon Apprendi and Booker claims. Pease v. U.S., 2006 WL 2175271 * 6 n. 3 (M.D. Fla. July 21, 2006) (citing U.S. v Grinard-Henry, 399 F. 3d 1294, 1297 (11th Cir.) cert. denied 544 U.S. 1041 (2005)). As noted above, the Court has already determined the Petitioner effectively waived, at his plea colloquy, any appeal or challenge of the length of his sentence collaterally in the context of a section 2255 motion.

Moreover, the Plea Agreement takes note that "[u]nder Apprendi v. New Jersey, 530 466 (2000), in order for a maximum sentence of Life to be applicable to Count One, the following fact must be proven beyond a reasonable doubt: The defendant participated in an unlawful agreement to import 5 or more kilograms of cocaine into the United States." (Criminal, Doc. # 137, p1-2). The

Petitioner initialed each page verifying that he understood that he could receive life and that he had imported more than five (5) Kilograms of cocaine. In the Plea Agreement the Petitioner agreed that

> [f]rom the late 1990's through at least 2001 the Weeks smuggling organization was responsible for importing approximately 5 loads of cocaine into the United States in the Middle District of Florida. The defendant knowingly and willfully joined in the scheme by participating on at least 3 occasions as a lookout and an offloader. Several thousand kilograms were brought into the Middle District of Florida during the ventures.

(Criminal, Doc. # 137, p. 14). The Petitioner signed the document agreeing that he had participated in a conspiracy that was responsible for bring in thousands of kilograms of cocaine. Thus, the amounts of cocaine were sufficiently established and agreed to by the Petitioner under Apprendi with his Counsel Atty. Smith present and agreeing to the Plea agreement. Thus, the Petitioner himself established the quantity of cocaine.

It is clear that even if the Petitioner had not waived his claims under <u>Apprendi</u> and <u>Booker</u>, the Petitioner failed to establish that his counsel's performance was so deficient that he was not performing as the "counsel" guaranteed by the Sixth Amendment and he failed to demonstrate that Atty. Smith's ineffective assistance prejudiced the defense to such a degree that the defendant was deprived of the right to a fair trial. Therefore, the Petitioner failed to demonstrate ineffective assistance of counsel.

### (5) Whether Defense Counsel Gave Ineffective Assistance By Failing to Adequately Review the PSR with the Petitioner

The Petitioner states that he received ineffective assistance of counsel because Atty. Smith failed to investigate or go over the PSR with him prior to sentencing. The Petitioner received a 210

month sentence but others involved received only a forty-six (46) month sentence. Under the PSR, the Petitioner was held accountable for the entire amount of cocaine smuggled into the country by all of the conspirators. The Petitioner claims that he only offloaded and served as a lookout on one occasion in 1998. However, the Petitioner was held accountable for over 150 kilograms of cocaine. The Petitioner states that he never intended to enter into an agreement that prohibited him from challenging his sentence and that his sentence should be vacated because of the disparate treatment he received versus the shorter sentences received by co-conspirators.

First, when asked at the sentencing hearing if he had covered the PSR with the Petitioner, Atty. Smith answered that yes he had read, reviewed, and discussed the PSR with the Petitioner. (Criminal, Doc. # 226, p. 3:13-17). Therefore, contrary to the Petitioner's argument, Atty. Smith did discuss and review the PSR with the Petitioner. Secondly, as previously discussed, the Petitioner waived his right to appeal his sentence.

The right to appeal is statutory and can be knowingly and voluntarily waived. Cuevas v. U.S., WL 3408180 *6 -7 (M.D. Fla. November 27, 2006) (citing Williams v. U.S., 396 F.3d 1340, 1342 (11th Cir.), cert. denied, 126 S.Ct. 246 (2005)); U.S. v. Bushert, 997 F.2d 1343, 1350 (11th Cir.1993). For this court to enforce an appeal waiver in a plea agreement, the Government must demonstrate either that the Magistrate Judge specifically questioned the Petitioner concerning his understanding of the sentence appeal waiver during the Fed. R. Crim. P. 11 colloquy or that it is manifestly clear from the record that the Petitioner otherwise understood the full significance of the waiver. Cuevas, WL 3408180 *6 -7 (citing Williams, 396 F .3d at 1342).

A Defendant's waiver of the right to appeal "directly or collaterally" encompasses his right to challenge his sentence in a section 2255 proceeding. Cuevas, WL 3408180 *6 -7 (citing Williams,

396 F.3d at 1342; U.S. v. White, 307 F.3d 336, 341-44 (5th Cir.2002); Garcia-Santos v. U.S., 273 F.3d 506, 508-09 (2d Cir.2001); Davilla v. U.S., 258 F.3d 448, 451-52 (6th Cir.2001); U.S. v. Cockerham, 237 F.3d 1179, 1183-87 (11th Cir.2001); Mason v. U.S., 211 F.3d 1065, 1069-70 (7th Cir.2000)). The waiver is enforceable against claims of ineffective assistance of counsel at sentencing, because "a contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." Williams, 396 F.3d at 1342; *see also* Cockerham, 237 F.3d at 1182 (appeal and collateral attack waiver provision in plea agreement waives the right to section 2255 petition based on ineffective assistance of counsel unless challenge concerns the validity of the plea or waiver).

Furthermore, contrary to the Petitioner's claim, he was informed at his plea hearing that upon entering his plea that he was waving his right to appeal his sentence. (Criminal, Doc. # 155, 11:1-16). The Defendant stated that he understood that he was losing his right to appeal. (Criminal, Doc. # 155, 11:16). Based upon the Petitioner's own statements at the Rule 11 plea colloquy, he waived his right to challenge his sentence based upon the PSR in a § 2255 Motion. Cuevas, WL 3408180 *6 -7 (citing Williams, 396 F .3d at 1342).

### (6) Whether Atty. Murray Provided Ineffective Assistance

On the date of the hearing, Atty. Murray requested a continuance in order to secure the appearance of Darrell Taylor or the ability to proffer the testimony of Darrell Taylor, a co-defendant in the conspiracy involving the Singletarys. He claimed at the hearing that he was ineffective for not having Taylor at the hearing, although he had just located him. The Court will examine this issue although it was not raised until the date and time of the hearing.

-23-

An ineffective assistance of appellate counsel claim is considered under the same two-part test announced in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). <u>Milligan v. U.S.</u>, 213 Fed. Appx. 964, 966, (11th Cir. 2007) (citing <u>Grubbs v. Singletary</u>, 120 F.3d 1174, 1175 (11th Cir.1997)).

The Petitioner's Counsel states that he has been ineffective in representing the Petitioner in the instant action because he failed to discover and present the co-defendant Taylor at the hearing. The Court allowed Atty. Murray to present a proffer of testimony of a conversation that took place between Atty. Murray and the Petitioner's co-defendant Taylor the day prior to the hearing. Atty. Murray stated that if Taylor was allowed to testify, he would say that he did not know when the Singletary's left his employ or when he fired them, and that for the purposes of the conspiracy to import cocaine, he "told the others if the Singletarys were involved, [he] would not be involved." (Tr. 24:9-18).

Atty. Murray asked the Court for a continuance to present the testimony of Taylor live. When asked why this was coming up after the Petition had been filed literally two years previously, Atty. Murray continued that he had been ineffective. He stated,

> I should have found that out earlier. I should have done more than that and I should have done it and had the guy here. But I ask you not to hold that against my client. I have found him, although I found him late. He is speaking exactly to the point of when this – they terminated their participation in the conspiracy. (Tr. 27:1-7). I throw myself on the sword now saying I should have found him earlier and my only excuse is not very good. I do this stuff all over the country and I've been to Maine, Connecticut, Maryland four times, Georgia four times, tried a case of 51 felonies out in Missouri. I've filed in California; I've filed in Washington. None of that is an excuse. I screwed up and you should not hold my client responsible. I definitely was ineffective in not having him here. He is absolutely going to say what I said he's going to say. (Tr. 27:19-25, 28:1-3).

When the Court asked the Government for their response, the Government asked the Court to consider the weight it would put on the proffer in regard to Taylor's testimony. The Government, in turn, proffered that Taylor, in his numerous debriefings with law enforcement during the investigation, advised law enforcement that the Defendant was involved on at least three occasions during the importation scheme. The issue of him being fired from BRB was never discussed. (Tr. 30:20-25). There was a familial relationship between the two which resulted in these two brothers being allowed to continue their participation in a conspiracy that went into 2001. Taylor did not discuss with law enforcement that he would not work with the two brothers. In fact, he advised that they were involved on at least three occasions and that's what prompted law enforcement to finally approach the defendant and discuss with him his activities in the importation of cocaine. "So Mr. Taylor's previous representations to the United States will be contrary to those which were presented" in the proffer. (Tr. 31:1-12).

While the Petitioner's Atty. states he was ineffective, his argument fails to meet the standard set forth in <u>Strickland</u>. The Government also proffered testimony from Taylor that totally contradicts the statements made by Atty. Murray. In fact, according to the Government's proffer, Taylor told the Government that the Singletary brothers were involved in bringing drugs into the country on at least three (3) occasions, he never mentioned BRB, and Taylor never told law enforcement officers that he would not work with the Petitioner nor his brother. (Tr. 30:20-25, 31:4-5). The Court notes that Taylor has a familial relationship with the Petitioner and therefore, any testimony he may have presented would have been less credible due to his relationship with the Petitioner and his previous contradictory statements.

Moreover, Atty. Murray's efforts to locate Taylor and vigorous argument on behalf of his client demonstrate to the Court that his representation was not deficient but instead it was reasonable. Thus, Atty. Murray's proffer and allegations that he was ineffective fail to establish that his representation was so deficient that he was not performing as the "counsel" guaranteed by the Sixth Amendment nor did he establish that the Petitioner was prejudiced to such a degree that he was deprived of his rights.

## CONCLUSION

Based upon the testimony and evidence presented at the hearing the Court respectfully recommends that the Petitioner has failed to meet his burden under § 2255.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

The Petitioner Charles Keith Singletary's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct sentence by a Person in Federal Custody (Doc. #1) should be **DENIED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully Recommended** at Fort Myers, Florida, this   19th   day of July, 2009.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record